ORIGINAL

RECEIVED
NOV 22 2023
PRO SE OFFICE

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
--------------------------------X

DARYL STEPHEN,

Plaintiff,

v.

THRIFTY, LLC; THRIFTY RENT-A-CAR SYSTEM, LLC, DOLLAR THRIFTY AUTOMOTIVE GROUP, INC; HERTZ CORPORATION; JANE DOE; and JOHN DOE,

Defendants.

--------------------------------X

**AMENDED COMPLAINT**

22-CV-3855 (NRM) (LB)

Plaintiff Daryl Stephen, appearing *pro se*, as and for his first Amended Complaint, hereby alleges[1]:

**PRELIMINARY STATEMENT**

1. This is a civil action pursuant to Section 1981 of the Civil Rights Act of 1866, 42 U.S.C §1981 et seq.; the New York State Human Rights Law, N.Y Exec. Law §296 (13); the New York Consumer Protection Law, G.B.L. §398-B (1); and the New York State Civil Rights Law Art. 4, N.Y. Civ. §40. Plaintiff seeks damages, injunctive and other equitable relief, and reasonable costs and disbursements.

**JURISDICTION**

2. This Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under the laws of the United States, and

---

[1] This document was prepared with assistance from the City Bar Justice Center's Federal Pro Se Legal Assistance Project.

supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state laws.

3. This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists among the parties, and the amount in controversy exceeds $75,000.

## VENUE

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in the Eastern District of New York. Specifically, Defendants committed the acts alleged herein in the Eastern District of New York. Additionally, Plaintiff resides within this District.

## PARTIES

5. Plaintiff Daryl Stephen currently resides at 1316 Sterling Place, in Kings County, New York State.

6. Defendant Thrifty LLC is a corporation that does business in New York State, is headquartered in Florida, and is incorporated in Oklahoma.

7. Defendant Thrifty LLC was formerly known as Thrifty Rent-A-Car System. A limited liability corporation by that name is registered with the New York Secretary of State to do business in New York and is headquartered and incorporated in Oklahoma. Accordingly, Plaintiff names Thrifty Rent-A-Car System, LLC as an additional Defendant herein.

8. Defendant Dollar Thrifty Automotive Group, Inc. is listed in corporate parent Hertz Corporation's Securities and Exchange Commission's Form 10-K for the fiscal year ending

December 30, 2022 ("2022 10-K"), as a Hertz subsidiary that operates the Thrifty brand. This Defendant is incorporated in Delaware. All three corporate Thrifty Defendants will be collectively referred to herein as "Thrifty."

9. Defendant Hertz Corporation ("Hertz") does business in New York State and is incorporated in Delaware. According to its 2022 10-K, Hertz does business as Firefly, Hertz Car Sales, Hertz Rent-A-Car, Thrifty, Dollar Rent A Car, and Thrifty Car Rental.

10. Defendant Jane Doe is an employee of defendant Thrifty's operations at its New York John F. Kennedy International Airport ("JFK") rental location.

11. Defendant John Doe is an employee of defendant Thrifty's operations at its JFK rental location and acts as a manager of that location.

## STATEMENT OF FACTS

12. On November 21, 2016, Plaintiff reserved a rental car with Thrifty using Carrentals.com, an online third-party booking agent. The reservation was for a seven-day period. The car was to be picked up at or after 10:00 A.M. on November 28, 2016, at Thrifty's JFK rental location.

13. On November 28, 2016, Plaintiff arrived at Thrifty's JFK rental location at or about 1:30 P.M. He was wearing casual clothing, having just come from home.

14. After a short wait in line, Plaintiff was called to the counter and asked by a Thrifty employee, a non-Black woman, to produce his driver's license and a credit or debit card to complete the rental transaction, and Plaintiff did so. Plaintiff does not know the name of this employee; she is hereinafter referred to as "Jane Doe."

15. Plaintiff then waited for Jane Doe to call him up to sign a rental agreement contract. Other customers in line behind him were called up and completed rental transactions while he waited, which made Plaintiff concerned. After waiting approximately 25 minutes, Plaintiff approached Jane Doe and requested to speak with Thrifty's manager. No manager appeared.

16. After an additional twenty minutes had passed with no manager appearing and no rental contract being provided, Plaintiff saw approximately six uniformed Port Authority police officers, including a sergeant, arrive at the Thrifty location and approach the customer service counter near where Plaintiff was waiting. Plaintiff heard the police ask the Thrifty employee behind the counter to speak with the manager of the location.

17 Plaintiff then saw the location manager approach the Port Authority police with Plaintiff's driver's license and credit card in hand. Because Plaintiff did not learn this individual's name, he is referred to herein as "John Doe."

18. At this point, Plaintiff asked John Doe, a Caucasian man, for information and clarity as to why Plaintiff had had to wait almost an hour to sign a rental agreement. John Doe ignored Plaintiff.

19. A Port Authority police sergeant then interrupted Plaintiff and told Plaintiff that his driver's license and credit card would not be returned, and that Plaintiff would be held in police custody pending an investigation. This investigation was conducted based on his appearance and race, and stereotypical assumptions Jane Doe, John Doe and the Port Authority police made about him based on his race.

20. John Doe and Thrifty's actions in calling the police, and their actions before doing so and thereafter, were motivated by racial prejudice against him as a Black man. Plaintiff knows of no

other reason that these actions were taken. Plaintiff was the valid holder of his driver's license, and his credit card was likewise valid and issued to him in his name. There was no reason for Thrifty to be suspicious of Plaintiff other than because of his race.

21. Port Authority police then handcuffed Plaintiff, proceeded to the exit of the rental agency, and held him in between a set of double doors. While detained there, Plaintiff was directed by Port Authority police to provide his full name, address, date of birth, and Social Security number. Plaintiff complied.

22. While Plaintiff was detained in handcuffs between the double doors, the Port Authority police sergeant called Capital One Bank, the institution that issued the credit card Plaintiff had provided Thrifty's employee to rent the car.

23. Capital One Bank verified to the Port Authority police sergeant that Plaintiff was indeed holder of a valid credit card issued to him by them, the one that the sergeant held in his hand.

24. After receiving this information, the sergeant removed the handcuffs from Plaintiff and released him from between the double doors. The sergeant told Plaintiff he had to leave the premises, and that he could never return to Thrifty's JFK airport location. Plaintiff driver's license was returned by the Port Authority police but not his credit card, which was still held by John Doe and/or Jane Doe. Since Plaintiff was directed not to reenter the premises, he left without his credit card.

25. Because John Doe, Jane Doe and/or Thrifty retained his credit card, Plaintiff closed his account with Capital One Bank for security reasons.

26. Plaintiff was embarrassed and humiliated by Thrifty's actions. John Doe's actions and those of the Port Authority police occurred in a public space and before other Thrifty customers

and individuals walking through the area. Plaintiff experienced severe emotional distress due to these actions. Plaintiff was treated by Defendants as though he was guilty of a crime when in fact he was not and had done nothing wrong.

27. Plaintiff was unable to rent a car due to Thrifty's actions and had to cancel travel plans he had made weeks earlier. Lacking a rental vehicle, he had to take public transportation home.

28. Plaintiff continues to experience harm because of Defendants' actions. On September 30th, 2021, Plaintiff made an online reservation with Dollar rental car company, a Thrifty affiliate, to rent a car at its East 22 Street location in New York County.

29. When Plaintiff arrived at that location, Dollar refused to rent a car to him stating that he was on a Hertz "do not rent list." The Dollar employee instructed Plaintiff to call Hertz, Dollar and Thrifty's parent company, at a dedicated "Hertz do not rent department" number (namely, 405-384-8342). This conversation occurred in front of other customers and individuals, causing Plaintiff embarrassment, humiliation, and emotional distress.

30. Plaintiff called the number provided on the next business day, October 1, 2021. He was informed by a Hertz agent at that number that he was on a "permanent do not rent list" maintained and operated by Hertz. He was advised by the agent that John Doe, at the behest of Thrifty and Hertz, had placed Plaintiff on the "permanent do not rent list" in 2016 due to "fraudulent activity." Plaintiff was also informed that being placed on the "do not rent list" was irreversible, and that he would not be able to rent from Hertz or any Hertz affiliate, including Dollar and Thrifty then or at any time in the future.

31. Defendants' actions in putting Plaintiff on the "permanent do not rent list" maintained by Hertz were a result of racial prejudice. Plaintiff did not engage and had not engaged in any fraudulent activity when attempting to rent a car from Defendants.

32. On September 27, 2023, Plaintiff called the Hertz "do not rent department" number and was informed that he is still on the "permanent do not rent list" and cannot rent vehicles from Hertz or any of its affiliates at any time. He was also told that there is no way for an individual to get his name removed from this list.

33. Plaintiff has been barred from making and enforcing contracts, i.e., from renting vehicles from Hertz and its affiliates, including Thrifty, due to Defendants' discriminatory actions. His being placed on the Hertz "permanent do not rent list" is a direct result of Thrifty's conduct which stemmed from its employees' racial prejudice. Plaintiff continues to experience harm because of this conduct – he is still on the "permanent do not rent list" although he did nothing wrong. This harm is ongoing.

34. Plaintiff continues to experience inconvenience, humiliation, emotional distress, and other harms because of Defendants' conduct.

35. Defendants' conduct constitutes a continuing violation of the federal and state laws set forth above. For this reason, statutes of limitations applicable to these laws have not been tolled.

## CLAIMS FOR RELIEF

**Count 1: Violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C §1981 et seq.: Compensatory Damages**

36. The allegations in each of the foregoing paragraphs are repeated, realleged and incorporated in this paragraph by reference.

37. By refusing to allow Plaintiff to enter a contract to rent a car from them, Defendants denied Plaintiff the same right to make and enforce contracts, and to enjoy all benefits, privileges, terms, and conditions of a rental car contractual relationship as it would have provided to white individuals.

38. Defendants' actions have caused and continue to cause Plaintiff emotional distress, embarrassment, humiliation, and other harm.

39. By reason of Defendants' actions as set forth herein, Plaintiff is entitled to and seeks an award of compensatory damages in an amount to be determined by the Court that will fairly compensate him for damages he sustained as a result of Defendants' conduct.

**Count 2: Violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C §1981 et. seq.: Compensatory Damages**

40. The allegations in each of the foregoing paragraphs are repeated, realleged and incorporated in this paragraph by reference.

41. By posting Plaintiff's name to their "permanent do not rent list," and by continuing to bar Plaintiff from entering into contracts to rent cars or other vehicles from them, Defendants denied Plaintiff the same right to make and enforce contracts, and to enjoy all benefits, privileges, terms,

and conditions of a rental car contractual relationship as it would have provided to white individuals.

42. Defendants' actions have caused and continue to cause Plaintiff emotional distress, embarrassment, humiliation, and other harm.

43. By reason of Defendants' actions as set forth herein, Plaintiff is entitled to and seeks an award of compensatory damages in an amount to be determined by the Court that will fairly compensate Plaintiff for damages he sustained as a result of Defendants' conduct.

**Count 3: Violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C §1981 et. seq.: Punitive Damages**

44. The allegations in each of the foregoing paragraphs are repeated, realleged and incorporated in this paragraph by reference.

45. By denying Plaintiff the ability to rent a car from them, Defendants acted with malice or indifference to Plaintiff's federally protected rights.

46. Punitive damages will appropriately punish Defendants for their conduct and will deter them from committing such conduct in the future.

47. Plaintiff is entitled to and seeks an award of punitive damages in an amount to be determined by the Court

**Count 4: Violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C §1981 et. seq.: Punitive Damages**

48. The allegations in each of the foregoing paragraphs are repeated, realleged and incorporated in this paragraph by reference.

49. By adding Plaintiff's name to their "permanent do not rent list," and continuing to refuse to enter into contracts with Plaintiff to rent a car, Defendants acted with malice or indifference to Plaintiff's federally protected rights.

50. Punitive damages will appropriately punish Defendants for their conduct and will deter them from committing such conduct in the future.

51. Plaintiff is entitled to and seeks an award of punitive damages in an amount to be determined by the Court.

**Count 5: Violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C §1981 et. seq.:**

**Injunctive Relief**

52. The allegations in each of the foregoing paragraphs are repeated, realleged and incorporated in this paragraph by reference.

53. By posting Plaintiff's name to their "permanent do not rent list," and by continuing to bar Plaintiff from entering into contracts to rent cars or other vehicles from them, Defendants denied Plaintiff the same right to make and enforce contracts, and to enjoy all benefits, privileges, terms, and conditions of a rental car contractual relationship as it would have provided to white individuals.

54. Plaintiff is entitled to and seeks an order directing Defendants to remove his name from their permanent do not rent list, so that he is free to contract with them in the future.

**Count 6: Violation of the New York State Human Rights Law, N.Y. Exec. Law §290 et seq.: Compensatory Damages**

55. The allegations in each of the foregoing paragraphs are repeated, realleged and incorporated in this paragraph by reference.

56. By refusing to rent a car to Plaintiff, Defendants refused to trade with him based on his race in violation of the New York State Human Rights Law, N.Y. Exec. Law §296(13).

57. Defendants' actions have caused and continue to cause Plaintiff emotional distress, embarrassment, humiliation, and other harm.

58. Plaintiff is entitled to and seeks an award of compensatory damages pursuant to N.Y. Exec. Law §297(4)(c) in an amount to be determined by the Court.

**Count 7: Violation of the New York State Human Rights Law, N.Y. Exec. Law §290 et seq.: Compensatory Damages**

59. The allegations in each of the foregoing paragraphs are repeated, realleged and incorporated in this paragraph by reference.

60. By placing Plaintiff on their permanent do not rent list, and by keeping his name on this list to present, Defendants refused to trade with him based on his race in violation of the New York State Human Rights Law, N.Y. Exec. Law §296(13).

61. Defendants' actions have caused and continue to cause Plaintiff emotional distress, embarrassment, humiliation, and other harm.

62. Plaintiff is entitled to and seeks an award of compensatory damages pursuant to N.Y. Exec. Law §297(4)(c) in an amount to be determined by the Court.

**Count 8: Violation of New York Miscellaneous Laws, N.Y. G.B.L. §398B:**

**Penalties**

63. The allegations in each of the foregoing paragraphs are repeated, realleged and incorporated in this paragraph by reference.

64. Defendants placed and maintain Plaintiff's name on their permanent do not rent list because of his race and color.

65. By placing and maintaining his name on their permanent do not rent list, and by refusing to rent a car to Plaintiff, Defendants have violated New York Miscellaneous Laws, N.Y. G.B.L. §398B.

66. Plaintiff is entitled to an award of penalties of not less than $1,000 and not more than $2,500 for placing Plaintiff's name on Defendants' permanent do not rent list and for each such refusal to rent.

WHEREFORE, Plaintiff Daryl Stephen requests the following relief:

A. Judgment in his favor on each claim made in this Amended Complaint;
B. An award of compensatory damages on Counts 1, 2, 6 and 7 of the Amended Complaint;
C. An award of punitive damages on Counts 3 and 4 of the Amended Complaint;
D. Injunctive relief as set forth in Count 5 of the Amended Complaint;
E. An award of penalties on Count 8 of the Amended Complaint;
F. An award of costs and disbursements herein; and

G. Such other and further relief as this Court may deem just and proper.

Dated: Brooklyn, New York

November 2023

Daryl Stephen
Pro Se Plaintiff
Address: 1316 Sterling Pl.
Apt. #1R
Brooklyn, NY 11213
Tel. (917) 547-2145