UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────X
DARYL STEPHEN,

            Plaintiff,                   **MEMORANDUM & ORDER**

   -against-                            22-cv-3855 (NRM) (LKE)

THRIFTY, LLC; THRIFTY RENT-A-CAR
SYSTEM, LLC; DOLLAR THRIFTY
AUTOMOTIVE GROUP, INC.; HERTZ
CORPORATION; JANE DOE; JOHN DOE,

            Defendants.
───────────────────────────────X

**NINA R. MORRISON**, United States District Judge:

      Plaintiff Daryl Stephen, proceeding *pro se*, initiated this action under 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), and N.Y. General Business Law ("GBL") § 398–b, against Thrifty, LLC; Thrifty Rent-A-Car System, LLC; Dollar Thrifty Automotive Group, Inc.; Hertz Corporation; Jane Doe; and John Doe, (collectively "Defendants"). Plaintiff alleges that, due to discrimination based on his race, Defendants refused to rent him a car from their facilities and placed him on a list that barred him from ever renting cars from Hertz or any of its subsidiaries and affiliates (the "Do Not Rent List"). Defendants have moved to dismiss Plaintiff's Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing, *inter alia*, that Plaintiff's claims should be dismissed due to the procedural bars of statutes of limitations, collateral estoppel, and mootness. For the reasons that follow, the Court grants Defendants' motion to dismiss in part and denies it in part.

1

## **BACKGROUND**

The following facts are taken from Plaintiff's Amended Complaint, which the Court must accept as true for purposes of Defendants' motion to dismiss, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as well as from the motion papers.

### I. The November 28, 2016 Incident

On November 28, 2016, Plaintiff arrived at Thrifty Car Rental's John F. Kennedy ("JFK") airport location after reserving a rental car online a week prior. Amended Compl. ("Am. Compl.") ¶ 12, ECF No. 9 (Nov. 22, 2023). When he arrived at the rental counter, Plaintiff handed his driver's license and credit card to a non-Black Thrifty employee, whom he refers to in this action as Jane Doe, to complete the rental transaction. *Id.* ¶ 14. After waiting approximately 45 minutes and asking to speak with a manager, Plaintiff observed six uniformed Port Authority police officers enter the building, approach the rental counter, and ask for the manager. *Id.* ¶¶ 15–16. Plaintiff then observed the manager, whom he identifies as a Caucasian man and refers to in this action as John Doe, emerge from behind the counter holding Plaintiff's license and credit card. *Id.* ¶¶ 17–18. Plaintiff attempted to communicate with John Doe but was ignored, and the officers then told Plaintiff that his cards would not be returned and that he would be held in custody pending an investigation. *Id.* ¶¶ 18–19. The officers handcuffed Plaintiff and held him in the building's vestibule, asking him various questions to confirm his personal information, and calling Plaintiff's bank to confirm he held an account there. *Id.* ¶¶ 21–23. After answering the officers' questions, Plaintiff was released but told he could "never

2

return" to Thrifty's JFK location, and was only given his license back, not his credit card.  *Id.* ¶ 24.

## II. Plaintiff's Placement on the "Do Not Rent List"

On September 30, 2021, Plaintiff made an online reservation with Dollar Rental Car Company, a Thrifty affiliate, to rent a car at its East 22nd Street location in Manhattan.  *Id.* ¶ 28.  When Plaintiff arrived, he was prohibited from renting a car and told he was on Hertz's[1] "Do Not Rent List."  *Id.* ¶ 29.  Plaintiff was instructed to call Hertz's Do Not Rent Department number.  *Id.*  The next day, Plaintiff called the number and was told that he was placed on the list in 2016 by Thrifty manager John Doe due to "fraudulent activity."  *Id.* ¶ 30.  Plaintiff was further informed that being placed on the Do Not Rent List was irreversible and that he would not be able to rent from any Hertz affiliate at any point in the future.  *Id.*

## III. Hertz's Bankruptcy Discharge and Plaintiff's State Action

On May 22, 2020, Hertz and its subsidiaries filed for Chapter 11 Bankruptcy.  *See* Bankruptcy Filing, ECF No. 24-3 (Nov. 22, 2024);[2] Def. Mem. in Supp. of Mot. to

---

[1] Plaintiff alleges that Hertz is the parent company of Dollar and Thrifty.  Am. Compl. ¶ 29.

[2] This Court may take judicial notice of the court filings in Defendants' bankruptcy proceeding.  *See, e.g.*, *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the facts of such litigation and related filings." (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998))).

3

Dismiss ("Def. Mem.") 6, ECF No. 24-12.[3]  Subsequently, on September 17, 2020, Hertz and its subsidiaries published a "Notice of Deadlines for Filing Proofs of Claim" in various newspapers, stating that October 28, 2020, was the deadline to file proof of any claims against Hertz and its subsidiaries. Def. Mem. at 6, 10.  The following year, the bankruptcy court issued an order confirming the discharge of claims on June 10, 2021.  *Id.* at 6.

On October 5, 2021, Plaintiff filed a suit in the Civil Court of the City of New York, Kings County, against Thrifty and its affiliates.  Def. Mem. at 7.  The following year, on June 29, 2022, Plaintiff filed his original Complaint in federal court.  *See* Compl., ECF No. 1 (June 29, 2022).  On August 31, 2022, the state court dismissed certain claims Plaintiff raised in that forum because "Defendant provided [P]laintiff with constructive notice" of the October 28, 2020 claim deadline date due to Hertz's bankruptcy and "[P]laintiff did not file a notice of claim by such date."  *Stephen v. Thrifty*, No. CV-24307-21/K1 (Civ. Ct. City of N.Y., Aug. 31, 2022), Ex. I to Def. Mot. to Dismiss ("State Court Order") 2, ECF No. 24-10.[4]

### IV. Defendants' Motion to Dismiss and Plaintiff's Responses

On November 22, 2024, Defendants filed their motion to dismiss.  Def. Mot. to Dismiss, ECF No. 24.  Plaintiff responded with a "motion to impose sanctions on

---

[3] Pincites refer to page numbers generated by the federal courts' Case Management/Electronic Case Files system (CM/ECF), and not a document's internal pagination.

[4] The Court takes judicial notice of the state court decision. *See supra* note 2 (citing *Glob. Network Commc'ns, Inc.*, 458 F.3d at 157).

4

defense counsel and dismiss Defendants' motion with prejudice." Pl. Mot. to Impose Sanctions, ECF No. 26. Defendants then filed a reply brief in support of their motion to dismiss. Def. Reply Br. in Supp. of Mot. to Dismiss ("Def. Reply"), ECF No. 27. Though briefing was thus complete on Defendant's motion, Plaintiff, without first seeking leave of the Court, filed a supplemental memorandum of law in opposition to the defendants' motion to dismiss. Pl. Supplemental Mem. in Opp. to Def. Mot. to Dismiss ("Pl. Supp. Mem.") 3, ECF. No. 28. Defendants moved to strike Plaintiff's supplemental opposition, Def. Mot. to Strike, ECF No. 35, but the Court granted Plaintiff retroactive leave to file the supplemental opposition in light of his *pro se* status; the Court also gave Defendants an opportunity to file a sur-reply. Docket Order dated July 10, 2025. The Court ordered that no further briefing would be accepted other than Defendants' sur-reply, should they elect to file one. *Id.*

Defendants filed a sur-reply in support of their motion to dismiss on July 29, 2025. Def. Sur-Reply in Support of Mot. to Dismiss ("Def. Sur-Reply"), ECF No. 42. Plaintiff filed a brief opposing the Defendants' Sur-Reply, but the Court struck that filing from the record because briefing on the motion was complete per the Court's July 10, 2025, order. Docket Order dated Aug. 6, 2025.

## STANDARD OF REVIEW

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of*

5

*Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  In reviewing a *pro se* complaint, the Court must be mindful that the plaintiff's pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)); *see also Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009) (noting that, "[e]ven after *Twombly,*" courts "remain obligated to construe a *pro se* complaint liberally" (citations omitted)).  However, "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,' even for a *pro se* plaintiff."  *Peralta v. N.Y.C. Dep't of Educ.*, No. 21-CV-6833 (EK) (LB), 2023 WL 6201507, at *3 (E.D.N.Y. Sep. 22, 2023) (quoting *Harris,* 572 F.3d at 72).

## **DISCUSSION**

Plaintiff's Amended Complaint raises eight causes of action.[5]  Three of those causes of action concern the November 28, 2016, incident, and the other five concern Plaintiff's subsequent placement on the Do Not Rent List, which he states he learned of on September 30, 2021.  For the reasons discussed below, Plaintiffs' causes of action concerning the November 28, 2016, incident must be dismissed as time-barred, but his causes of action related to the Do Not Rent List — including his cause of action seeking injunctive relief — survive Defendants' motion to dismiss.

---

[5] Plaintiff's causes of action are under 42 U.S.C. § 1981, NYSHRL, and GBL § 398–b. While Plaintiff references New York State Civil Rights Law § 40 in the Preliminary Statement of his Amended Complaint, Am. Compl. ¶ 1, he does not cite that statute in his causes of action.

6

## I. Statute of Limitations

In their motion, Defendants argue that all of Plaintiff's claims should be barred by the applicable statute of limitations. Def. Mem. at 11. The statute of limitations for Plaintiff's § 1981 claims is three years. *See Fouche v. St. Charles Hosp.*, 43 F. Supp. 3d 206, 214 (E.D.N.Y. 2014) (citing *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004)).[6] Discrimination claims under NYSHRL are subject to a three-year statute of limitations. *Moore v. Metropolitan Transp. Auth.*, 999 F. Supp. 2d 482, 494 (S.D.N.Y. 2013).

### A. Plaintiff's Claims Concerning the November 28, 2016 Incident

Plaintiff's claims arising out of the November 28, 2016, incident are time-barred and must be dismissed. Those claims accrued on November 28, 2016, and Plaintiff did not initiate this action until June 29, 2022, roughly five and a half years later. Thus, his lawsuit was filed after the statutes of limitations for both his claims under § 1981 (three years) and NYSHRL (three years) had run. Accordingly, the Court dismisses as time-barred the first, third, and sixth causes of action of Plaintiff's Amended Complaint.

---

[6] Defendants state that the statute of limitations for § 1981 claims is up to four years. Def. Mem. at 11 (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383 (2004)). In *Jones*, the Supreme Court held that a "federal catch-all" statute of limitations of four years applied to causes of actions that arose "under an Act of Congress enacted after December 1, 1990," including claims made newly possible by any post-1990 enactment affecting § 1981 claims. 541 U.S. at 382. Because Plaintiff's § 1981 claims do not rely on a post-1990 enactment to the statute, the four-year "federal catch-all" statute of limitations does not apply to his claims. In any event, a statute of limitations of four years would not affect the Court's analysis of Plaintiff's claims here.

B. <u>Plaintiff's Claims regarding the Do Not Rent List</u>

By contrast, Plaintiff's claims arising from his placement on the Do Not Rent List fall within the required statutes of limitations, as they did not accrue until September 30, 2021, when Plaintiff learned of his placement on the list.

A claim accrues once the "plaintiff knows or has reason to know of the injury which is the basis of his action," *Veal v. Geraci*, 23 F.3d 722, 724 (2d Cir. 1994) (quoting *Singleton v. New York*, 632 F.2d 185, 191 (2d Cir. 1980)), as the claim cannot accrue "until the challenged conduct causes the claimant injury." *Id.* at 725; *see also Thompson v. Metropolitan Life Ins. Co.*, 149 F. Supp. 2d 38, 48 (S.D.N.Y. 2001) ("[W]here plaintiff would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted, the so-called 'diligence-discovery rule of accrual' applies." (quoting *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998))).

Plaintiff was not aware he was placed on the Do Not Rent List until September 30, 2021, when he attempted to rent a car at one of Defendants' locations. Am. Compl. ¶ 28. Taking all factual allegations in Plaintiff's Complaint as true, he did not know, and there is no reason he should have known, he was on the Do Not Rent List prior to that time. Because "the challenged conduct cause[d] . . . injury" on September 30, 2021, *Veal*, 23 F.3d at 725, the statute of limitations on Plaintiff's claims related to the Do Not Rent List began on that date. Thus, the earliest date after which Plaintiff's claims could be barred due to a statute of limitations would be September 30, 2024. Plaintiff filed his Complaint on June 29, 2022, and his Amended Complaint

8

on November 22, 2023, well within the statutes of limitations for his federal § 1981 claims and his NYSHRL claims.

Accordingly, Plaintiff's claims related to his placement on the Do Not Rent List — the second, fourth, fifth, seventh and eighth causes of action in his Amended Complaint — are not time-barred and survive Defendants' motion to dismiss.

\* \* \*

Thus, the Court <u>dismisses</u> Plaintiff's first, third, and sixth causes of action — which concern the November 28, 2016, incident — as time-barred. The Court <u>denies</u> Defendants' motion with regard to its claim that Plaintiff's second, fourth, fifth, seventh and eighth[7] causes of action are untimely, all of which arise from Plaintiff's placement on the Do Not Rent List.[8]

---

[7] Defendants also argue that Plaintiff's eighth cause of action — raised under N.Y. GBL § 398–b — must be dismissed because GBL § 398-b does not provide a private right of action. Def. Mem. at 11, n.4. Defendants, however, have not provided any authority from either New York or federal courts to support that claim, instead citing a case involving an unrelated provision, GBL § 349. *See id.* (citing *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 503 (S.D.N.Y. 2023)). Moreover, at least one court in the Eastern District of New York has allowed a private discrimination claim under GBL § 398–b to survive summary judgment. *Harvey v. NYRAC, Inc.*, 813 F. Supp. 206, 212 (E.D.N.Y. 1993) ("[I]f plaintiff can establish that defendants' refusal to rent her a luxury car was racially motivated, then § 398-b as a remedial statute may provide her with a remedy for that discrimination. Accordingly, . . . this [claim] must await further discovery . . . .").

[8] In their motion to dismiss, Defendants additionally argue that all of Plaintiff's causes of action must be dismissed under the doctrine of collateral estoppel, citing the State Court Order dated August 31, 2022. "[A] federal court generally is required to consider first the law of the State in which the judgment was rendered to determine its preclusive effect." *Marrese v. Am. Acad. of Orthopedic Surgeons*, 470 U.S. 373, 375 (1985). Under New York law, collateral estoppel is "a flexible doctrine and whether to apply it to a particular case depends on 'general notions of fairness involving a practical inquiry into the realities of the litigation.'" *In re Hyman*, 502

9

## II. Injunctive Relief and Mootness

Defendants argue that Plaintiff's fifth cause of action, seeking injunctive relief in the form of removal from the Do Not Rent List, must be dismissed as moot because, as of November 20, 2024, Plaintiff is no longer on the Do Not Rent List. Def. Mem. at 12. As support for that claim, Defendants attach an affidavit from a customer care manager at Hertz. *See* Clanton Aff. in Supp. of Def. Mot. to Dismiss dated Nov. 20,

---

F.3d 61, 66 (2d Cir. 2007) (quoting *Jeffreys v. Griffin*, 801 N.E.2d 404, 409 (N.Y. 2003)).

Defendants appear correct that the state court held that — because Hertz filed for bankruptcy in May of 2020 and Plaintiff received constructive notice that any claims against Hertz must be filed by October 28, 2020 — his claims in the state court action must be dismissed. *See* State Court Order. However, Plaintiff did not learn of his placement on the Do Not Rent List until *after* the deadline to file claims associated with Hertz's bankruptcy discharge had passed. Having reviewed the state court order provided by Defendants, this Court does not find that the state court explicitly decided whether Plaintiff's failure to raise his claims associated with the Do Not Rent List, which accrued *after* the claim deadline date, were foreclosed by the bankruptcy discharge. Thus, collateral estoppel does not bar Plaintiff from raising his claims related to the Do Not Rent List in this action. Accordingly, the Court also rejects, with respect to Plaintiff's Do Not Rent List claims, Defendants' separate argument that, notwithstanding collateral estoppel, the bankruptcy discharge claim deadline date requires dismissing Plaintiffs' claims. *See* Def Mem. at 9–10. Those claims concerning the Do Not Rent List did not accrue until after the bankruptcy claim deadline date passed.

To the extent Defendants seek dismissal of the action on the ground that *res judicata* bars Plaintiff's claims from being heard in federal court because they could and should have been raised in the state court action, the Court does not reach that issue as it was not properly asserted in the motion to dismiss. Defendants only raised that argument for the first time in their sur-reply to their motion, after which briefing on the motion concluded and Plaintiff had no opportunity to respond. *See Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) ("[T]he party wishing to raise the defense is obliged to plead it at the earliest possible moment." (citation modified) (quoting *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1155 (2d Cir. 1968)); *cf. Bey v. City of New York*, 454 F. App'x 1, 4 (2d Cir. 2011) (finding no abuse of discretion in district court's acceptance of res judicata defense where opposing party was "well on notice of the affirmative defense" and "had a full opportunity to oppose it on the merits").

10

2024 ("Clanton Aff.") ¶ 5, ECF No. 24-11. As a threshold matter, the Court must accept all allegations in Plaintiff's Amended Complaint as true when evaluating Defendant's motion, *Iqbal*, 556 U.S. at 678, and Plaintiff alleges that he remains on the Do Not Rent List and continues to suffer harm from his inclusion on the List. Am. Compl. ¶ 33. In any event, even if the Court were to consider Defendant's claim that Plaintiff has been removed from the Do Not Rent List, that fact alone would not render Plaintiff's request for injunctive relief moot.

  The Supreme Court has made clear that "'voluntary cessation of a challenged practice' will moot a case only if the defendant can show that the practice cannot 'reasonably be expected to recur.'" *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 189, (2000)). Defendants have a "formidable burden" to show that they will not "return to [their] old ways"; otherwise, "a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off." *Id.* at 241 (citations omitted). Moreover, while a party's repudiation of its past conduct may sometimes help demonstrate unlikely recurrence, what matters is "not whether a defendant repudiates its past actions, but what repudiation can prove about its future conduct." *Id.* at 244. In *Fikre*, the government declared that the plaintiff was taken off the "no-fly list" in question, and represented that he would not be placed back on the list in the future based on currently available information. *Id.* at 242. The Supreme Court unanimously agreed that that declaration was not enough to show

11

that the injury that led the plaintiff to file the lawsuit (*i.e.,* his placement on the no-fly list) could not be reasonably expected to recur, making the issue not moot. *Id.*

Here, not only have the Hertz Defendants failed to allege that Plaintiff will not be placed back on the DNR list in the future, but they also have not made any repudiation of their past conduct. *See* Clanton Aff. The Second Circuit has noted that the "sparse" nature of the government's declaration, along with the absence of any statute or public regulations that provided standards for when the government could remove or add individuals to its list, were factors in the Supreme Court's holding in *Fikre*. *Srour v. New York City, New York*, 117 F.4th 72, 84 (2d Cir. 2024) (finding that a plaintiff's claim *was* moot when his application for a firearm permit was granted after previously being denied, because the status of the permit depended on "a robust set of rules and regulations"). Here, the affidavit provided by Defendants appears to be even more sparse than the government's declaration in *Fikre*.

Defendants cite multiple cases for the proposition that the hallmark of a moot case is that the relief sought is no longer needed, but they cite no cases for their proposition that Plaintiff must, at the pleading stage, provide specific factual allegations suggesting that they are engaging in a discriminatory practice that is likely to place him back on the Do Not Rent List. Def. Sur-Reply at 6. While Defendants cite *Williams v. New York State Office of Mental Health*, No. 10-CV-1022 (SLT) (JO), 2011 WL 2708378, at *4 (E.D.N.Y. Jul. 11, 2011), as an example where a court held the plaintiff's request for an injunction was moot, Def. Mem. at 12, that case is readily distinguished from Plaintiff's circumstances. The *Williams* court

12

found that the plaintiff, who was previously detained and involuntarily medicated, had a "subjective" and "speculative" belief that those events may occur again after he was released. *Id.* at *2. In Plaintiff's case, he asserts that there is no explanation for his initial placement on the DNR List besides Defendants' allegation of undefined "fraudulent activity," nor any information about rules and regulations governing the process through which Defendants add or remove individuals from the list. *See* Am. Compl. ¶ 30. On this record (and assuming *arguendo* the Court even considers Defendants' attached declaration at this stage of the litigation), Plaintiff's assertion that he is at risk of being placed back on the List in the future is not merely subjective or speculative. Accordingly, Defendants' motion to dismiss is further denied with regard to Plaintiff's § 1981 claim for injunctive relief.

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is granted with respect to the first, third, and sixth causes of action in the Amended Complaint, and denied with respect to the second, fourth, fifth, seventh, and eighth causes of action in the Amended Complaint.

SO ORDERED.

/s/ *Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated: September 26, 2025
       Brooklyn, New York

13